**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

| | |
|---|---|
| CESAR DANIEL RANGEL RAMIREZ, | Case No. 2:25-cv-02446-RFB-MDC |
| Petitioner, | **ORDER** |
| v. | |
| BRIAN HENKEY, *et al.*, | |
| Respondents. | |

## I.  INTRODUCTION

This case is one of a rapidly growing number before this Court challenging the federal government's reading of the Immigration and Nationality Act (INA) to authorize mandatory detention of all noncitizens charged with entering the United States without inspection.[1] The executive branch now takes the position that the INA, specifically 8 U.S.C. § 1225(b)(2)(A), requires the detention of all undocumented individuals during the pendency of their removal proceedings, which can take months or years. According to this interpretation, detention without a hearing is mandatary, no matter how long a noncitizen has resided in the country, and without any due process to ensure the government has a legitimate, individualized interest in detaining them.

According to a leaked internal memo, the Department of Homeland Security (DHS), in conjunction with the Department of Justice (DOJ) adopted this new legal position on a nationwide

---

[1] This Court has already granted petitioners relief—both preliminary and on the merits—in dozens of similar challenges. See Livia Vicharra v. Henkey, No. 2:25-cv-02336-RFB-EJY, 2025 WL 3564725, at *1 n.1 (D. Nev. Dec. 12, 2025) (collecting over forty cases).

1  basis on July 8, 2025.[2] It subjects millions of undocumented U.S. residents to prolonged detention
2  without the opportunity for release on bond, in contravention of decades of agency practice and
3  robust due process protections hitherto afforded to such residents under 8 U.S.C. § 1226(a).[3] On
4  September 5, 2025, the Bureau of Immigration Appeals (BIA) issued a precedential decision
5  adopting this new interpretation of the government's detention authority under the INA. See Matter
6  of Yajure Hurtado, 29 I&N Dec. 216 (BIA 2025) ("Hurtado"). After Hurtado, immigration judges
7  no longer have authority to hear bond requests or grant bond to noncitizens present in the U.S.
8  who entered without inspection. Id.

9  　　　　The overwhelming majority of district courts across the country, including this Court, that
10 have considered the government's new statutory interpretation have found it incorrect and
11 unlawful. See Escobar Salgado v. Mattos, No. 2:25-CV-01872-RFB-EJY, 2025 WL 3205356 (D.
12 Nev. Nov. 17, 2025) (finding "that the plain meaning of the relevant statutory provisions, when
13 interpreted according to fundamental canons of statutory construction," as well as the legislative
14 history and decades of consistent agency practice establish "that the government's new
15 interpretation and policy under [§ 1225(b)(2)(A)] is unlawful."); see also Barco Mercado v.
16 Francis, No. 1:25-CV-06852, at *9-10 (S.D.N.Y. Nov. 26, 2025) (collecting over 350 decisions by
17 over 160 different district judges finding the application of §1225(b)(2)(A) to noncitizens residing
18 in the United States unlawful). A nationwide class has also been certified, and declaratory relief
19 granted to all class members holding that they are being detained without a bond hearing
20 unlawfully. See Bautista v. Santacruz, No. 5:25-CV-01873-SSS-BFM, 2025 WL 3289861 (C.D.
21 Cal. Nov. 20, 2025); Bautista v. Santacruz, No. 5:25-CV-01873-SSS-BFM, 2025 WL 3288403
22 (C.D. Cal. Nov. 25, 2025).

23 　　　　Petitioner is currently detained without the opportunity for release on bond in the custody
24 of Federal Respondents at Nevada Southern Detention Center, pursuant to this new detention

---

[2] See ICE Memo: Interim Guidance Regarding Detention Authority for Applications for Admission, AILA Doc. No. 25071607 (July 8, 2025), https://perma.cc/5GKM-JYGX.

[3] See Kyle Cheney & Myah Ward, Trump's new detention policy targets millions of immigrants. Judges keep saying its illegal., Politico (Sept. 20, 2025 at 4:00 p.m. EDT), https://www.politico.com/news/2025/09/20/ice-detention-immigration-policy-00573850, https://perma.cc/L686-E97L.

"policy." He asserts the application of § 1225(b)(2) to him is unlawful under the INA, and his continued detention violates the Due Process Clause of the Fifth Amendment. He seeks a writ of habeas corpus requiring that he be released unless Respondents provide him with a bond hearing under § 1226(a). For the reasons set forth below, the Petition is granted and the Court orders Respondents to provide Petitioner a constitutionally adequate bond hearing by **December 30, 2025,** or release him.

## II.   PROCEDURAL HISTORY

On December 9, 2025, Petitioner filed his Petition for a Writ of Habeas Corpus. ECF No. 1. On December 11, 2025, this case was transferred to the undersigned judge as related to three pending putative class actions pending before the Court. ECF No. 3. That same day, the Court ordered Respondents to show cause by December 15, 2025, why the Court should not grant the Petition. ECF No. 5.

On December 15, 2025, Respondents' counsel filed a notice of appearance and motion to extend time to file a response to the Order to Show Cause, seeking <u>eight additional days</u> to respond and citing administrative burdens, including deadlines in other immigration detention cases and the time required to gather documents relevant to Petitioner's claims, as grounds for good cause. ECF No. 7 at 3. Petitioner's counsel opposed said request. <u>Id.</u> at 2. The Court granted the extension in part, giving Respondents six additional days to file and an extended deadline of December 21, 2025. ECF No. 11.

On December 22, 2025, a day after the Court's *extended* deadline, Respondents filed a second motion to extend time to respond, seeking a new deadline of January 5, 2026—an <u>additional fifteen days</u> beyond the already-extended December 21, 2025, deadline. ECF No. 13. Petitioner's counsel again opposed this extension request. <u>Id.</u> at 2. Respondents' counsel cited several administrative burdens as the basis for the extension: the AUSA assigned to this case had to go on leave due to illness, and "[t]he defensive division of the USAO-Nevada is severely understaffed with only two AUSAs handling defensive cases . . . . In addition to this case, this

- 3 -

office has received in the last two weeks twenty-two other habeas corpus immigration cases, which will need the preparation of responsive pleadings[.]" Id.

The Court's Order follows.

### III. BACKGROUND

#### A. Legal Background

The Court fully incorporates by reference the legal background regarding the government's detention authority and removal proceedings under the INA, as well as the government's new statutory reading and mass detention "policy," set forth in its ruling in Escobar Salgado, 2025 WL 3205356, at *2-6 (D. Nev. Nov. 17, 2025).

#### B. Petitioner Rangel Ramirez

The Court makes the following findings as to Petitioner. Mr. Rangel Ramirez is a 21-year-old native and citizen of Venezuela who has resided continuously in the United States since 2022. ECF No. 1 at 8. In 2022, Petitioner entered the United States as an unaccompanied minor. Id. at 2. He was inspected by immigration authorities upon entry and released to the custody of a relative, his aunt. Id. Petitioner possesses a valid work permit and has been compliant with all immigration proceedings to-date. Id. at 8. In addition, he currently has a pending asylum application. Id. Prior to his detention, Petitioner resided with his family and worked in Caldwell, Idaho, as a small business manager and General Contractor. Id. He has no criminal history. Id.

Petitioner has been detained by Respondents at Nevada Southern Detention Center since December 1, 2025, when he was apprehended by ICE while leaving his home in Idaho to go to work. ECF No. 1 at 8. He has not been scheduled for a hearing on his removability or a bond hearing, and in his Petition, it is stated that "ICE officials have indicated they do not intend to release Petitioner from their custody." Id.

### IV. LEGAL STANDARDS

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S.

Const., Art I, § 9, cl. 2). "Its province, shaped to guarantee the most fundamental of all rights, is to provide an effective and speedy instrument by which judicial inquiry may be had into the legality of the detention of a person." Carafas v. LaVallee, 391 U.S. 234, 238 (1968). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." Preiser v. Rodriguez, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration-related detention. Zadvydas v. Davis, 533 U.S. 678, 687 (2001); see also Demore v. Kim, 538 U.S. 510, 517 (2003); Trump v. J. G. G., 604 U.S. 670, 672 (2025) (describing immigration detainees' challenge to their confinement and removal as falling "within the 'core' of the writ of habeas corpus.") (*per curiam*) (citations omitted). "The application for the writ usurps the attention and displaces the calendar of the judge or justice who entertains it and receives prompt action from him within the four corners of the application." Yong v. I.N.S., 208 F.3d 1116, 1120 (9th Cir. 2000) (citation omitted).

### V.     DISCUSSION

As an initial matter, the Court first addresses Respondents' failure to respond to the Petition. This Court ordered Respondents to show cause why the Petition should not be granted by December 15, 2025, in accordance with 28 U.S.C. § 2243. ECF No. 5. On that due date, December 15, 2025, Respondents filed a Motion to Extend Time to File a Response to the show cause order, requesting eight additional days to file their response and a new deadline of December 23, 2025. ECF No. 7. The Motion stated that Petitioner opposed the request and that various administrative burdens faced by Respondents' counsel constituted good cause for the extension. Id. The Court granted the extension request in part, giving Respondents an extended deadline of December 21, 2025—six additional days to file. In its Order, the Court made the following findings:

1. Respondents necessarily would have to possess the following documents to detain Petitioner: Notice to Appear (Form I-862), Form I-213, Form I-286, and in most cases, an arrest warrant.
2. These documents are uniquely in the possession of Respondents as the agencies and individuals responsible for Petitioner's detention. Therefore, Respondents have the responsibility to preserve these documents and make them available to Petitioner.
3. Given the statutory and constitutional rights at issue, Respondents have a duty and obligation to ensure they have adequate resources to maintain and provide accurate information regarding people whom they arrest or detain.

ECF No. 11. The Court continued: "Furthermore, Respondents have now been party to dozens of substantially similar immigration matters before this Court and submitted near-identical arguments in essentially every response and/or return. The Court has already granted Respondents' counsel leave to incorporate by reference their prior pleadings for this precise reason." Id. The Court specified that the administrative burdens cited in this first extension request—competing deadlines in other immigration detention cases and necessary document-gathering—did not constitute exceptional circumstances in this case. Id.

As of this Order, over a week has passed since the Court's original deadline to show cause, and Respondents failed to file their Return even by the extended deadline, which passed earlier this week. Instead, Respondents filed a second extension request, a day after the extended deadline, seeking an additional 15 days to file their Return. Their new proposed deadline is January 5, 2026, a full three weeks beyond the Court's original Order. In their second request, Respondents again cited administrative burdens: an AUSA assigned to the case going on leave, short staffing in the AUSA's office, and a high number of immigration detention cases and associated deadlines. See ECF No. 13.

The Supreme Court has emphasized that habeas corpus proceedings, and the federal habeas statute, are intended to provide petitioners with "swift, flexible, and summary determination[s]." Preiser v. Rodriguez, 411 U.S. 475, 495 (1973) (citing 28 U.S.C. § 2243). While a respondent's failure to respond to a habeas petitioner's claims does not entitle that petitioner to default judgment, it is within the district court's discretion to enter a default judgment for petitioner in instances where respondent's failure to respond creates an excessive delay in proceedings. Gordon v. Duran, 895 F.2d 610, 612 (9th Cir. 1990) (citing to Ruiz v. Cady, 660 F.2d 337, 341 (7th Cir. 1981), for

the proposition that district courts have discretion to enter default judgment upon a government's failure to respond creating excessive delay). Further, where a respondent is guilty of long, inadequately explained delays, courts may presume that a petitioner is being detained illegally. See Ruiz, 660 F.2d at 340-41.

While there is a strong preference for habeas cases to be resolved on the merits, the Court cannot allow further delay given the liberty and due process interests at stake. It reasserts its findings from its Order pertaining to the initial extension request: Respondents are uniquely in the possession of the documents their counsel is consistently seeking extra time to retain, by virtue of their role as the individuals and organizations responsible for the arrest and detention of Petitioner and similarly situated individuals, and furthermore, Respondents are uniquely responsible for any administrative burdens imposed by the number of immigration detention cases facing Respondents' counsel, as the heightened number of cases is due to the government's own "policy." The Court finds that Respondents cannot engage in a policy of increased arrests and/or detention but not assign adequate resources to respond to legitimate—and frequently successful—legal/constitutional challenges to this detention policy. Moreover, the Court also notes that counsel has not indicated that there are insufficient attorneys in the USAO to handle these cases; rather, the record reflects only that a small number of attorneys have been "assigned" to handle these cases. Finally, the Court again notes that Respondents have been party to many similar cases before this Court over the last few months. Their counsel consistently raises the same arguments in these cases, frequently incorporating prior responses by reference, which the Court has allowed. The Court is unconvinced that such lengthy delay is warranted in this case given the liberty interests at stake. For these reasons, the Court rules on the Petition and grants relief without a response from the federal Respondents, addressing the routine arguments that Respondents have raised in scores of cases before this Court.[4]

### A. Jurisdiction

The Court has habeas jurisdiction to review Petitioner's challenge to the lawfulness of his

---

[4] See Escobar Salgado, 2025 WL 3205356; Hernandez Duran v. Bernacke, 2:25-cv-2105-RFB-EJY, 2025 WL 3237451 (D. Nev. Nov. 19, 2025); Jacobo Ramirez v. Noem, No 2:25-cv-02136-RFB-MDC, 2025 WL 3270137 (D. Nev. Nov. 24, 2025).

- 7 -

detention, because the relevant jurisdiction stripping provisions of the INA, 8 U.S.C. § 1252 do not apply. See Escobar Salgado, 2025 WL 3205356, at *8-10; Hernandez Duran v. Bernacke, 2:25-cv-2105-RFB-EJY, 2025 WL 3237451, at *4 (D. Nev. Nov. 19, 2025). In evaluating the jurisdiction stripping provisions of the INA, the Court is guided "by the general rule to resolve any ambiguities in a jurisdiction-stripping statue in favor of the narrower interpretation and by the strong presumption in favor of judicial review." Arce v. United States, 899 F. F.3d 796, 801 (9th Cir. 2018) (*per curiam*) (internal quotations and citations omitted).

### B. Administrative Exhaustion

The Court fully incorporates by reference its prior finding that administrative exhaustion is excused as futile due to the BIA's decision in Hurtado. Jacobo Ramirez v. Noem, No 2:25-cv-02136-RFB-MDC, 2025 WL 3270137, at *5-6 (D. Nev. Nov. 24, 2025).

### C. Statutory Question

Petitioner challenges the government's new interpretation of the INA, and his detention thereunder, as unlawful. Petitioner argues this interpretation of the statutory scheme of §§ 1225 and 1226 is flawed, contradicting both the statutory framework and the decades of agency practice applying § 1226(a) to people like Petitioner. This Court agrees with Petitioner and fully incorporates by reference its holding and findings in Escobar Salgado v. Mattos. 2025 WL 3205356, at *10-22.

Petitioner entered the United States as an unaccompanied minor, was inspected upon entry, and was arrested and detained by ICE in Caldwell, Idaho, years later, far from any port of entry. Accordingly, the Court finds Petitioner is subject to detention under § 1226(a) and its implementing regulations, not § 1225(b)(2)(A), and that the government's new interpretation and policy under that provision is unlawful. Escobar Salgado, 2025 WL 3205356, at *10-22.

### D. Due Process

Petitioner also challenges his ongoing detention without the opportunity for release on bond under § 1225(b)(2) as unconstitutional under the Due Process Clause of the Fifth Amendment. Even if this Court were to accept the government's new reading of § 1225(b)(2), it would still have to contend with Petitioner's due process challenge on this basis. This Court

incorporates by reference the legal authorities and standards set forth in Escobar Salgado v. Mattos regarding the due process rights of noncitizens. 2025 WL 3205356, at *22-24. For the following reasons, the Court finds that Petitioner is currently being detained without the opportunity for release on bond in violation of his procedural and substantive due process rights.

1. Procedural Due Process

To determine whether detention violates procedural due process, courts apply the three-part test set forth in Mathews v. Eldridge, 424 U.S. 319 (1976). See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1203-07 (9th Cir. 2022) (collecting cases and applying the Mathews test in a similar immigration detention context and holding "[u]ltimately, Mathews remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context").

Under Mathews, the courts weigh the following three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews, 424 U.S. at 335.

The first Mathews factor considers the private interest affected by the government's ongoing detention of Petitioner without the opportunity for release on bond. See Mathews, 424 U.S. at 335. Here, that is Petitioner's interest in being free from imprisonment, "the most elemental of liberty interests." Hamdi, 542 U.S. at 529. In this country, liberty is the norm and detention "is the carefully limited exception." United States v. Salerno, 481 U.S. 739, 755 (1987); see also Rodriguez Diaz, 53 F.4th At 1207 ("An individual's private interest in freedom from prolonged detention is unquestionably substantial.") (citations omitted).

Additionally, Petitioner's liberty interest is not diminished by any final order of removal, or the availability of any existing process to challenge Respondents' decision to detain him without bond. Cf. id. at 1208 (holding the habeas petitioner's liberty interest was diminished by the fact that he was subject to a final order of removal, had already been afforded an individualized bond hearing, and had additional process available to him through a further bonding hearing before an

1  IJ upon a showing of materially changed circumstances).

2  Second, the Court considers "the risk of an erroneous deprivation of [Petitioner's] interest through the procedures used, and the probable value, if any, of additional procedures." Mathews, 424 U.S. at 335. There are no existing procedures whatsoever for Petitioner to challenge his detention pending the conclusion of his removal proceedings without the opportunity for release on bond. The risk of erroneous deprivation is extraordinarily high where ICE and DHS agency officials have sole, unguided, and unreviewable discretion to detain Petitioner without any individualized showing of why his detention is warranted, nor any process for Petitioner to challenge the exercise of that discretion. The likelihood of erroneous deprivation caused by this lack of process is demonstrated by numerous prior cases before this Court where an IJ held a bond hearing for a petitioner prior to Hurtado and found that the government had not established a justification for detention. See, e.g., Escobar Salgado, 2025 WL 3205356; Aparicio v. Noem, No. 2:25-CV-01919-RFB-DJA, 2025 WL 2998098 (D. Nev. Oct. 23, 2025); Berto Mendez v. Noem, No. 2:25-cv-02602-RFB-MDC, 2025 WL 3124285 (D. Nev. Nov. 7, 2025). Moreover, given that Petitioner has significant familial and work-related ties in the country, and because Respondents have not asserted he is dangerous or a flight risk, the Court finds that he is being arbitrarily and unjustifiably deprived of his liberty.

The additional procedures afforded under § 1226(a), including an individualized custody redetermination by an immigration judge, *i.e.*, a bond hearing, substantially mitigate the risk of erroneous deprivation of Petitioner's liberty, because those procedures require the government to establish that Petitioner presents a flight risk or danger to the community. This would account for the constitutional requirement that "once the flight risk justification evaporates, the only special circumstance [ ] present is the alien's removable status itself, which bears no relation to a detainee's dangerousness." Zadvydas, 553 U.S. at 691-92. An adverse decision by an immigration judge in a bond hearing can further be appealed, and Petitioner could seek additional custody redeterminations based on changed circumstances, such that the outcome of a bond hearing would be subject to "numerous levels of review, each offering [Petitioner] the opportunity to be heard by a neutral decisionmaker." Rodriguez Diaz, 53 F.4th at 1210 (finding the bond hearing procedures

1  available through the implementing regulations of § 1226(a) would render "the risk of erroneous
2  deprivation . . . relatively small.") (citation omitted). As such, the second Mathews factor also
3  weighs heavily in favor of granting Petitioner the procedural protections under § 1226(a).

4  The third and final Mathews factor considers the "Government's interest, including the
5  function involved and the fiscal and administrative burdens that the additional or substitute
6  procedural requirement would entail." 424 U.S. at 335. The Court acknowledges that the
7  government's interests in enforcing immigration laws, including "protecting the public from
8  dangerous criminal aliens" and "securing an alien's ultimate removal," are "interests of the highest
9  order." Rodriguez Diaz, 53 F.4th at 1188-89. These interests are in fact served by the
10 individualized determination by an immigration judge, based on a review of evidence presented
11 by the government and the noncitizen, as to whether an individual is dangerous or at risk of fleeing
12 removal proceedings, under existing, well-established procedures. In failing to articulate any
13 individualized reason why detaining Petitioner is necessary to enforce immigration law, the
14 question arises "whether the detention is not to facilitate deportation, or to protect against risk of
15 flight or dangerousness, but to incarcerate for other reasons." Demore, 538 U.S. at 532-33
16 (Kennedy, J. concurring). And the government has no interest in the unjustified deprivation of a
17 person's liberty.

18 Further, the Court finds that limiting the use of detention to only those noncitizens who are
19 dangerous or a flight risk through existing bond procedures serves the government and public's
20 interest by *reducing* the fiscal and administrative burdens attendant to immigration detention.
21 Hernandez v. Sessions, 872 F.3d 976, 996 (9th Cir. 2017) (Noting in 2017 that "the costs to the
22 public of immigration detention are staggering: $158 each day per detainee, amounting to a total
23 daily cost of $6.5 million. Supervised release programs cost much less by comparison: between 17
24 cents and 17 dollars each day per person.").

25 In sum, the Court finds the Mathews factors weigh heavily in factor of Petitioner, and
26 therefore, his detention without the opportunity for release on bond violates his procedural due
27 process rights.

28         2.  Substantive Due Process

1   Immigration detention violates the Due Process Clause unless it is ordered in a criminal
2   proceeding with adequate procedural protections, or in non-punitive circumstances "where a
3   special justification . . . outweighs the individual's constitutionally protected interest in avoiding
4   physical restraint." Zadvydas, 533 U.S. at 690.

5   Respondents have asserted absolutely no individualized justification—let alone a special
6   or compelling justification—to continue to deprive Petitioner of his physical liberty. Accordingly,
7   in addition to finding that the challenged regulation violates procedural due process, this Court
8   further finds that Petitioner is currently detained in violation of his substantive due process rights.
9   See Escobar Salgado, 2025 WL 3205356, at *25.

### E. Scope of Relief

The federal habeas corpus statute "does not limit the relief that may be granted to discharge of the applicant from physical custody." Carafas v. LaVallee, 391 U.S. 234, 238 (1968). "Its mandate is broad with respect to the relief that may be granted." Id. "It provides that '[t]he court shall . . . dispose of the matter as law and justice require.'" Id. (quoting 28 U.S.C. § 2243).

Here, Petitioner faces the specific harm of being detained without a bond hearing pursuant to § 1226(a). The Court finds that harm is remedied by ordering a bond hearing by **December 30, 2025**. Given the due process rights at stake, if a bond hearing is not provided promptly within that time frame, Petitioner shall be immediately released until it is determined that his detention is warranted under 8 U.S.C. § 1226(a).

### F. Attorneys' Fees

The Court defers on ruling on the matter of attorneys' fees and costs. Should Petitioner's counsel wish to pursue a claim for attorneys' fees and costs under the Equal Access to Justice Act (EAJA), they are instructed to file a separate motion on the issue in accordance with LR 54-14.

## VI. CONCLUSION

Based on the foregoing **IT IS HEREBY ORDERED** that the Petition (ECF No. 1) is **GRANTED**.

**IT IS FURTHER ORDERED** that Respondents must provide Petitioner with a bond

hearing pursuant to 8 U.S.C. § 1226(a) no later than **December 30, 2025**.

**IT IS FURTHER ORDERED** that Respondents are enjoined from denying Petitioner release on bond on the basis that he is subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)(2). Thus, in the event that bond is granted, the Court **ORDERS** that Respondents are enjoined from invoking the automatic stay to continue Petitioners' detention, as the Court has already found the automatic stay unconstitutional and adopts that finding here. Herrera v. Knight, No. 2:25-CV-01366-RFB-DJA, 2025 WL 2581792, at *13 (D. Nev. Sept. 5, 2025).

In the event that bond is granted, Respondents are **ORDERED** to immediately release Petitioner. The Court has received notice of the hardship other petitioners have incurred in their efforts to satisfy bond, and therefore, the Court **FURTHER ORDERS** that Petitioner be afforded until **February 13, 2026**, to satisfy any monetary bond conditions.

**IT IS FURTHER ORDERED** that if the individualized bond hearing is not conducted by **December 30, 2025**, Petitioner shall be immediately released until it is determined that his detention is warranted under 8 U.S.C. § 1226(a).

**IT IS FURTHER ORDERED** that the parties shall file a status report on the status of Petitioner's bond hearing by **December 31, 2025**. The status report shall detail if and when the bond hearing occurred, if bond was granted or denied, and if denied, the reasons for that denial.

**IT IS FURTHER ORDERED** that Respondents' (Second) Motion to Extend Time (ECF No. 13) is **DENIED.**

**DATED:** December 24, 2025.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**